DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MAIA T. PEREZ (MABN 672328)
Assistant United States Attorney
    150 Almaden Blvd., Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Facsimile: (408) 535-5066
    Email: maia.perez@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 16-00019 EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO REOPEN DETENTION HEARING AND RECONSIDERATION OF DETENTION ORDER |
| v. | |
| SERJOE MERCADO, | |
| Defendant. | |

    The United States of America, through David L. Anderson, United States Attorney for the

Northern District of California, and Maia T. Perez, Assistant United States Attorney, respectfully submits

this Opposition to defendant Serjoe Mercado's ("Defendant") Motion to Reopen Detention Hearing and

Reconsideration of Detention Order.

    Defendant seeks to reopen his detention hearing under 18 U.S.C. § 3142(f) on the basis that his

mental health has improved since his detention in January 2019.  Because Defendant was detained at a

bail review hearing pursuant to 18 U.S.C. § 3148, the provisions of § 3142(f) do not apply here.

Moreover, any objection to the § 3148 detention order is procedurally barred, and even if it wasn't,

1  Defendant's arguments fail on the merits.  Finally, Defendant's proposed release conditions are not

2  appropriate or adequate to prevent his risk of flight and danger to the community, and the presence of

3  Covid at Santa Rita by itself is not sufficient to overcome all of these factors that necessitate denial of

4  Defendant's motion.

5                                    **STATEMENT OF FACTS**

6  **I.    The Charged Offense Conduct**

7          Defendant is charged in a four count Indictment with violations of 18 U.S.C. § 641 (Theft of

8  Government Money, Property, or Records), 18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail Matter); 18

9  U.S.C. § 2114(a) (Robbery of Mail, Money or Other Property of the United States) and 18 U.S.C. § 111

10 (Assaulting, Resisting or Impeding Certain Officers or Employees).  The charges stem from a December

11 14, 2015 incident where Defendant violently assaulted a postal carrier and absconded with his postal

12 truck.

13         Specifically, on December 14, 2015, at about 11:00am, the victim postal carrier was parked inside

14 Defendant's residential apartment complex and was preparing mail for delivery.  Ex. 1, *MOI of Victim*

15 *Mail Carrier*.  Defendant grabbed the victim from behind and yanked him out of the vehicle.  *Id.*

16 Defendant then sat in the driver's seat of the truck.  *Id.*  When the victim attempted to stop Defendant and

17 grab the keys, Defendant struck the victim in the chest, knocking him back.  *Id.*  Defendant then drove the

18 truck away, swerving to the left.  *Id.*  He collided with a parked minivan, reversed and continued to drive

19 away out of view.  *Id.*  The victim later identified Defendant in a photo line up.  Ex. 2, *Photo Line Up*

20 *Witness Response*.  A witness who lived in the apartment complex also reported that he had seen

21 Defendant, who he knew as a neighbor, walking back and forth near where the robbery occurred around

22 10:30 to 11:00am.  Ex. 3, *MOI of Alex Esteban*.  Defendant's grandmother stated that he had left the

23 apartment about 10:30 that morning.  Ex. 4, *MOI of Angelina Maglicmot*.

24         A psychological evaluation conducted at the Bureau of Prisons found that Defendant "*was able* to

25 appreciate the nature, quality, and wrongfulness of his alleged behavior" at the time of this incident

26 (emphasis in original).  Ex. 7, *August 2020 Psych Evaluation*, at 10.  Following that determination, the

27 District Court has found that "sanity is not an issue in this case."  Ex. 8, *11/30/20 Hearing Transcript*.

28

UNITED STATES' OPPOSITION TO DEF.'S MOT. TO REOPEN DET. HRG.
CR 16-00019 EJD

## II.     Detention Hearings Pursuant to 18 U.S.C. § 3142(f)

This Court detained Defendant at his initial detention hearing on February 29, 2016.  ECF 6.  At the hearing, Defendant indicated that he would renew his request for release "upon further information from state court regarding mental health evaluation."  *Id.*

On September 14, 2016, the Court conducted a second detention hearing.  ECF 17.  The hearing was continued to September 21, 2016, to allow the parties "to explore supplemental resources and structured conditions for defendant's custodian."  *Id.*  On September 21, the Court issued an unsecured appearance bond for $50,000 co-signed by Defendant's mother and "strongly admonished [Defendant] to comply with his conditions of release including complying with all the requirements of the Santa Clara County Mental Health Court."  *Id.*; ECF 19.  Among other conditions, Defendant was required to participate in mental health counseling, participate in the mental health court, and "take all prescribed medication."  *Id.*

## III.    Defendant's Pretrial Release Violations

On October 15, 2018, Pretrial Services issued a violation memorandum charging that Defendant failed to report for drug testing and failed to report by telephone.  The memo noted that Defendant "frequently reports contact with police while 'hanging out with' his friends, though a records check found no new arrests.  His mother advised that he did not work or attend school, but ate, slept and hung out with friends.

On October 29, 2018, at approximately 1:18 am, San Jose police officers contacted Defendant after they located him with a members of a Norteno street gang drinking alcohol and littering in a local park after dark in violation of local ordinances. Ex. 5, *San Jose Police Report*.  After conducting a records check, it was determined that Defendant was a validated Norteno gang member hanging out with other validated Norteno gang members.  *Id.*  Defendant was found to have a screwdriver in his pocket, which the police determined was for use as a weapon.  *Id.*  Defendant was arrested and taken to jail, where he was asked to removed his shoelaces.  Defendant became verbally aggressive and took a fighting posture with the officer.  *Id.*  Defendant began to swing at the officer and punched the officer in the face, causing redness and pain.  *Id.*  Defendant continued to swing at the officer and thrash his body to avoid apprehension.  *Id.*  Five officers were involved in taking down Defendant, making it a Category Three use

of force.  *Id.*

On November 27, 2018, Pretrial Services issued a violation memorandum charging that Defendant failed to complete a mental health assessment and failed to report by telephone.  The memo noted that Defendant did not "grasp the significance" of his October arrest and "downplayed the fact that he had a screwdriver … while in the presence of gang members," as well as the assault on an officer.

On December 4, 2018, Pretrial Services issued a violation memorandum charging that Defendant failed to comply with his leave schedule.

On January 2, 2019, Pretrial Services issued a violation memorandum charging that Defendant failed to comply with his leave schedule again and failed to take his medication.  Pretrial noted that Defendant was only taking his medication in front of his mother about one third of the time.

On January 15, 2019, Pretrial Services issued a violation memorandum charging that Defendant failed to adequately participate in a mental health assessment.  Pretrial Services noted that during the assessment, Defendant "got easily frustrated and agitated."  During a conversation, Defendant told the Pretrial Officer that "he does not need to take medication and he knows right from wrong."  He was unable to recognize why his assault on the SJPD officer was concerning, and was "borderline combative."  Pretrial Services also included an email from Dr. Brad Novak, a psychologist who had attempted to evaluate the Defendant on January 3, 2019, at the request of both parties.  Dr. Novak reported that Defendant "quickly became hostile," "became more aggressive and accused [the doctor] of 'fucking interrogating me.'"  At that point, Dr. Novak stopped the interview and left as he did not feel safe continuing with the interview.  He refused to continue the interview even after defense counsel asked, noting the "risk that he would act out physically and/or become more threatening."

## IV.   Bail Review Hearings Pursuant to 18 U.S.C. § 3148

In connection with Defendant's pretrial violations, the Court held bail review hearings to admonish Defendant on the following dates:  Defendant on October 24, 2018; November 1, 2018[1]; November 7, 2018; November 28, 2018; December 12, 2018; and January 2, 2018.  ECF 54, 57, 58, 62, 67, 68.

---

[1] The November 1, 2018 appearance was before Judge van Keulen.

At Pretrial's request, a bail review hearing was set for January 16, 2019.  ECF 71.  However, Defendant failed to appear at the hearing and the Court issued a warrant for Defendant's arrest.  *Id.*  Defendant later appeared at the courthouse where he assaulted several U.S. Marshals while being taken into custody.  The Marshals report indicates that upon contact Defendant stated, "Fuck No!" and then began to kick and throw punches at the deputies. Ex. 6, *USMS Report*.  He continued to resist and violently throw punches.  *Id.*  The deputies took him to the ground where he continued to resist before finally submitting.  *Id*.  During the incident, one deputy suffered an abrasion on his head while another strained his back.  *Id.*

On January 17, 2019, Judge DeMarchi held "a bail review hearing on the recommendation of Pretrial Services that Mr. Mercado be detained." *See Audio of ECF 74, January 17, 2019 Hearing.*  Judge DeMarchi read Defendant his rights, the government summarized the charges alleged in the Pretrial Services memoranda dated January 2 and 15, 2019, and Judge DeMarchi detained Defendant on the basis of the matters cited in the Pretrial Services violation memoranda.  *Id.*

On February 5, 2019, this Court held a "hearing on the status of the case." *See Audio of ECF 76, Audio of February 5, 2019 Hearing.*  The parties discussed potential recusal in light of Defendant's assault on the Marshals and defense counsel gave an update on Defendant's pending state charges from his October arrest.  *Id.*  The Court asked if Defendant had any requests as to detention or release.  Defense counsel replied that Defendant would like to be released as soon as possible, but advised that he thought it was best for Defendant to undergo mental health treatment in custody.  *Id.*  The Court greed and indicated that Defendant's request was denied based on the information the Court had at the time.  *Id.*

## ARGUMENT

### I.   There Is No New Information To Reopen Defendant's § 3142(f) Detention Hearing.

A detention hearing pursuant to 18 U.S.C. § 3142(f) "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  Courts interpret this provision strictly. *See, e.g., United States v. Terrone*, 454 F. Supp. 3d 1009, 1017 (D. Nev. 2020); *United States v. Bararia*,

2013 U.S. Dist. LEXIS 67820, *9 (D. Nev. March 13, 2013); *United States v. Ward*, 63 F. Supp. 2d 1203, 1206-07 (C.D. Cal. 1999).

Defendant erroneously asserts that his detention hearing should be reopened under 18 U.S.C. § 3142(f) because his mental health has improved since his detention in January 2019.  Mot. at 3-4. Defendant misconstrues the statute:  Defendant was detained in January 2019 for pretrial release violations at a *bail review hearing* pursuant to 18 U.S.C. § 3148, not a detention hearing pursuant to 18 U.S.C. § 3142(f).  *See United States v. Patterson*, 2020 U.S. Dist. LEXIS 196824, *27 (E.D. Cal. Oct. 20, 2020) ("If a condition of pretrial release has been violated, a request to revoke a release order proceeds not under the initial release detention statute, 18 U.S.C. § 3142, but under 18 U.S.C. § 3148") (quoting United States v. Gill, 2008 U.S. Dist. LEXIS 120659, 2008 WL 2120069, at *1 (E.D. Cal. May 20, 2008)).

Contrary to Defendant's assertion, § 3142(f) does not provide a mechanism to reopen a § 3148 hearing.  *See Bararia*, 2013 U.S. Dist. LEXIS 67820, *7-8 ("i080t is not appropriate to seek to reopen the detention hearing under section 3142 after release has been revoked under section 3148."); *United States v. Mackie*, 876 F. Supp. 1489, 1491 (E.D. La. 1994) (§ 3142(f) is inapplicable where court relied on § 3148 in ordering detention).

 In *Bararia,* the district court noted that different standards apply when ruling on a motion for detention under § 3142(e) and (f) at the outset of a case and when ruling on revocation under § 3148.  *Id.*, at *8 (citing *United States v. Gill*, 2008 U.S. Dist. LEXIS 120659, 2008 WL 2120069 (E.D. Cal.); *see also United States v. Soria*, 2011 U.S. Dist. LEXIS 92183, 2011 WL 3651272 (D. Nev.).  The *Bararia* Court concluded that:

> "It is not consistent with the statutory construct to permit a defendant to revert back to the § 3142 standards after revocation has been entered under § 3148.  The language of § 3142(f) supports this conclusion as it specifically refers to the detention hearing held under § 3142 when it states that '[t]he hearing may be reopened . . . .'"

> *Id.*, at *8-9.  *See* 18 U.S.C. § 3142(f).

Defendant's most recent detention hearing under § 3142(f) was conducted in September 2016. Defendant does not claim that he was experiencing a decline in his mental health at that time.  Even if he did, decline in mental health is not information "that was not known" to Defendant at his detention hearing, where (1) he knew of his mental health diagnosis and had prescribed medication at the time of

his detention hearing, and (2) his decline in mental health was precipitated by his failure to comply with his pretrial release condition that he take his prescribed medication.

Defendant does not allege any new information not known to him at the time of his 2016 detention hearing and thus his motion to reopen his detention hearing under § 3142(f) should be denied.

## II.    Defendant's Motion To Reopen The Revocation Hearing Is Procedurally Barred.

From his arguments, it appears that Defendant seeks to reopen Judge DeMarchi's revocation order from his January 2019 bail review hearing.  However, the statutory time for objecting to the revocation order has long passed and this Court is not the appropriate forum to review Judge DeMarchi's order.

Pursuant to Fed. R. Crim. P. 59(a), a party may file an objection to a nondispositive magistrate court order "within 14 days after being served with a copy of a written order or after the oral order is stated on the record, or at some other time the court sets.  The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous. Failure to object in accordance with this rule waives a party's right to review."

District Courts in the Ninth Circuit have applied this statutory deadline in the detention and release context.  *See United States v. Tooze*, 236 F.R.D. 442 (D. Ariz. 2006) (Rule 59(a) governs appeals of § 3145(a) release orders); *United States v. McReynolds*, 2019 U.S. Dist. LEXIS 7547, at *2 (D. Ariz. Jan. 16, 2019); *United States v. Bell*, 2008 WL 11411709 (C.D. Cal. 2008).

As the *Tooze* Court explained, Rule 59(a) controls § 3145(a) under the supersession clause of the Enabling Act because it was enacted more recently.  *Id*.; 28 U.S.C. § 2072(b).  Likewise, § 3148 was last amended in 1986, while Rule 59(a) became effective in 2005 and was amended in 2009.  Under the supersession clause, Rule 59(a)'s 14-day statutory period controls § 3148.[2]

Judge DeMarchi pronounced her oral detention order on the record at the bail review hearing on January 17, 2019 – nearly two years ago.  Even if Defendant's competency were taken into account, Defendant's motion was filed more than 14 days after he was found competent by the District Court on

---

[2] The *Tooze* Court further examined Rule 59(a)'s provision that "a district judge refer to a magistrate judge" the order at issue.  The court determined that this provision was met because the District of Arizona's Local Criminal Rules clearly assigned pretrial detention hearings to magistrate judges. Similarly, it is the practice in this District that magistrate judge preside over detention hearings, and Local Criminal Rule 7-1(b) provides that a magistrate judge may conduct matters regarding detention.

1  November 30, 2020.  In addition, under Rule 59, any objection should be directed to the district court –

2  not the magistrate court and particularly not to a different magistrate court than the one that issued the

3  January 17 order.

4       Because this Court is not the appropriate forum to review Judge DeMarchi's order, and because

5  the 14-day period to object to Judge DeMarchi's order has elapsed, Defendant has waived his right to

6  review the order and his motion to reopen the issue of his revocation should be denied.  *See Tooze*, 236

7  F.R.D. 444 (government waived its right to appeal magistrate judge's release order because no objections

8  were filed within the statutory period under Rule 59(a)).

9  **III.  Defendant's Motion Fails On The Merits.**

10       Even if Defendant's motion was not procedurally barred – and it is – it would still fail on the

11  merits.  In the absence of a mechanism to reopen a § 3148 hearing, Defendant's motion may be construed

12  as a motion to reconsider the revocation order.  *Bararia*, 2013 U.S. Dist. LEXIS 67820, *11-12.  This

13  Court is not the appropriate forum to reconsider Judge DeMarchi's revocation order, but the government

14  examines the merits here in an abundance of caution.

15       In a pretrial release revocation proceeding governed by 18 U.S.C. § 3148(b), the judicial officer

16  shall enter an order of revocation and detention if, after a hearing, the judicial officer:

17      (1) finds that there is--
      (A) probable cause to believe that the person has committed a Federal, State, or
18        local crime while on release; or
      (B) clear and convincing evidence that the person has violated any other condition
19        of release; and
    (2) finds that--
20        (A) based on the factors set forth in § 3142(g) of this title, there is no condition or
      combination of conditions of release that will assure that the person will not flee or
21        pose a danger to the safety of any other person or the community; or
      (B) the person is unlikely to abide by any condition or combination of conditions
22        of release.

23       In the instant case, there is probable cause to believe that Defendant has committed at least two

24  violent felonies while on release.  First, he has been charged by the state with felony resisting an officer,

25  misdemeanor battery, and misdemeanor possession of a dirk or dagger in connection with his October

26  2018 arrest for carrying a dirk or dagger and his subsequent assault and battery on San Jose Police

27  officers.  Mot. at p. 5, fn. 2; Ex. 5.  Second, the U.S. Marshals have reported that Defendant committed a

28

felony assault on several deputies when they took him into custody in January 2019, in violation of 18 U.S.C. § 111 (the same charge alleged in Defendant's pending Indictment).

Probable cause that Defendant committed another crime is sufficient to meet the first prong of § 3148(b), but it should be noted there is also clear and convincing evidence that Defendant violated numerous other conditions of release on multiple occasions. Specifically, Pretrial Services Violation Memos charged that he failed to appear for drug tests, failed to report to his Pretrial Officer, failed to complete mental health assessments, failed to comply with his leave schedule while on house arrest, and failed to take his medication, all in violation of court orders and his pretrial release conditions. In August 2020, Defendant admitted taking his medication "on and off" the last two years. Ex. 7, at p. 2-3.

"When a defendant commits a federal or state felony offense while on pretrial release in a federal case, a presumption arises that no combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *United States v. Benavidez*, 2020 U.S. Dist. LEXIS 207085, *4-5 (D.N.M. Nov. 5, 2020) (citing 18 U.S.C. § 3148(b)(2). *See also United States v. Bararia*, 2013 U.S. Dist. LEXIS 67820, *5 (D. Nev. March 13, 2013). Thus, there is a presumption in favor of detention which Defendant must overcome in the second prong in order to be released.

Turning to the second prong of the § 3148(b) analysis, the § 3142(g) factors do not weigh in favor of Defendant's release.

1. *The Nature and Circumstances of the Offense Charged*

Defendant is charged with committing an unprovoked assault and robbery on a postal carrier and stealing his postal truck filled with mail. The victim postal carrier reported that Defendant approached him, grabbed him by the jacket and pulled him from his postal truck. Defendant then struck the victim in the chest and stole his mail truck. *Id.* A psychological evaluation conducted at the Bureau of Prisons found that Defendant "*was able* to appreciate the nature, quality, and wrongfulness of his alleged behavior" at the time of the incident (emphasis in original). Ex. 7.

2. *The Weight of the Evidence Against the Defendant*

The postal carrier has identified Defendant as his assailant in a photo line up, and another witness reported seeing Defendant at the crime scene around the time of the incident. Defendant does not appear to have any alibi, as his grandmother told law enforcement that Defendant left their apartment around the

UNITED STATES' OPPOSITION TO DEF.'S MOT. TO REOPEN DET. HRG.
CR 16-00019 EJD

time of the offense.  Defendant has also admitted to stealing the postal truck, though he maintains he hit the postal carrier by accident.

### 3. *The History and Characteristics of the Defendant*

Defendant has a history of assaults and carrying weaponry.  He was previously convicted of Carrying a Concealed Dirk or Dagger, a felony, in 2013, and was on probation and participating in Judge Manley's mental health court at the time he committed the instant offense.  More recently, he has been charged with felony resisting an officer, misdemeanor battery, and misdemeanor possession of a dirk or dagger for the assault on San Jose police officers, which occurred while he was on pretrial release in this case.  He is also accused of assaulting the U.S. Marshals when they took him into custody while he was on release in this matter.  Defendant also has convictions for Taking a Vehicle Without Owner Consent/Vehicle Theft, Loitering: Illegal Drug Activity, Theft/Petty Theft, and Driving Without a License.  Most of his convictions involve multiple probation violations.  Defendant also failed to appear at his most recent out of custody appearance on January 16, 2019 before this Court.

### 4. *Nature and Seriousness of Danger to the Community*

Following the determination that Defendant was able to appreciate the nature, quality, and wrongfulness of his behavior, the District Court has found that "sanity is not an issue in this case." Ex. 8, *11/30/20 Hearing Transcript*.  Accordingly, Defendant's improved mental health does not diminish his dangerousness and the likelihood that he may commit yet another violent unprovoked assault on federal employees, law enforcement, or other members of the community.

Defendant has proven that he will not abide by any condition or combination of conditions of release – particularly the requirement that he take his prescribed medications.  His failure to obey that condition was likely made while he was competent and not in a state of decline.  As a result, his current competency offers no reassurance that he will abide by his release conditions.  In addition, during his psychological evaluations at the Bureau of Prisons, psychiatry staff found some of Defendant's tablets in his cell, "suggesting he had not been taking his medication as prescribed" even while *in custody*.  Ex. 7, p. 5. Defendant also expressed that his psychiatric medications "were unnecessary" and that he could control his behavior without medications, and that he would only take his medication while undergoing a forensic evaluation or if they were court ordered.  *Id.*; Ex. 9, *April 2020 Psych Evaluation*, at p. 6.

Given the foregoing facts, Defendant cannot prevail on the § 3142(g) factors.  There is no condition or combination of conditions that will assure Defendant will not flee or pose a danger to the community.  Moreover, Defendant is unlikely to abide by any condition or combination of conditions the Court may fashion.

**IV.    Defendant's Proposed Release Conditions Are Not Appropriate**

In his motion, Defendant proposes he be released to the same custodian (his mother) on the same conditions that he previously violated.  Defendant's mother is not an appropriate custodian or surety: Defendant was in her care when he committed the instant offense, and he was further in her custody when he committed the assaults on the San Jose police and U.S. Marshals.  She has demonstrated that she cannot control him, cannot keep him on his medication, and cannot prevent him from hurting others in the community.

Court-ordered mental health treatment has also proven ineffective.  Defendant was participating in Judge Manley's state mental health court program when he committed the assault on the postal carrier.  After his release from detention in this case, he continued in that program, and then went to Pathways.  Despite these measures, Defendant's mental health still declined and he committed additional violent acts.  In Defendant's September 2016 bail study, his state Probation Officer reported that Defendant's compliance was "marginal," that he "had a history of failing to report as directed and his participation in treatment was poor."  Ex. 10, *PTS Bail Study Addendum*.  A therapist who worked with Defendant at the mental health court also stated that he "fails to attend counseling/therapy," "does not comply with his medication regimen," and "would often remain in his room and not attend."  *Id.*

Defendant's ability to receive mental health treatment will be even more limited now during Covid, when he will have few if any opportunities to meet with mental health professionals in person or attend group therapy like before.

In fact, many of the benefits of release – opportunities to work, volunteer, attend school, or otherwise occupy one's time – will be severely limited in the current environment.  In contrast, Defendant's release to the same circumstances as before jeopardizes his current medication regimen and recently-acquired competency.  Should his medication falter and his mental health decline again, it will likely take months to restore him to competency and will further delay this case.

UNITED STATES' OPPOSITION TO DEF.'S MOT. TO REOPEN DET. HRG.
CR 16-00019 EJD

1   Defendant has repeatedly demonstrated that he cannot succeed at home with his mother.  Putting

2   him back there is simply setting him up for failure.

3   **V.   The Covid Pandemic Is Not A Sufficient Reason To Release Defendant**

4       In the last line of his argument, Defendant suggests that the ongoing pandemic and health

5   conditions at Santa Rita Jail "should also be considered by the Court." Mot. at 6.

6       Because Defendant does not claim that he is at any increased risk for complications, his argument

7   for release due to Covid would apply "equally to every detainee in detention." *United States v.*

8   *Winchester*, 335 F.R.D. 82, 2020 WL 1515683, 12 (M.D.N.C. 2020).  The presence of Covid by itself

9   cannot be the sole determinant in assessing a request for release.

10      Even if Defendant did claim to have some condition that increased his risk of Covid, Defendant

11  would still be held to the requirements of §§ 3142(g) and 3148(b)(2) – requirements that Defendant

12  cannot meet.  *See United States v. Jones*, 2020 WL 1323109 (D. Md. Mar. 20, 2020) (declining to release

13  a pregnant defendant during the Covid pandemic where her bond was revoked because she tested positive

14  for cocaine use); *United States v. Benavidez*, 2020 U.S. Dist. LEXIS 207085, *8 (D.N.M. Nov. 5, 2020)

15  (denying motion for release where non-violent defendant who was detained pursuant to § 3148 claimed

16  hypertension put him at risk); *United States v. Kahn*, 2020 U.S. LEXIS 59411, *13 (S. D. Fla. April 2,

17  2020) (denying release for defendant accused of health care fraud, wire fraud and money laundering

18  whose bond was revoked after he was found with drugs and a woman who suffering a fatal overdose).

19      Here, the risk of Covid by itself does not overcome the § 3142(g) and § 3148(b)(2) analysis

20  supporting detention, nor does it outweigh the presumption in favor of detention created by Defendant's

21  two violent felonies on pretrial release.  It should also be noted that the Bureau of Prisons has begun

22  administering the Covid vaccine to inmates at its facilities.

23                                          Respectfully submitted,

24                                          DAVID L. ANDERSON
                                            United States Attorney
25

26  Dated:  January 14, 2020              _____/s/_____
                                            MAIA T. PEREZ
27                                          Assistant United States Attorney

28

UNITED STATES' OPPOSITION TO DEF.'S MOT. TO REOPEN DET. HRG.
CR 16-00019 EJD